UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff/Respondent,<br><br>v.<br><br>JOSE LUIS ALVAREZ-LOPEZ,<br><br>                    Defendant/Movant. | Case No. 1:11-cv-00494-EJL<br>          1:08-cr-00113-EJL<br><br><br>**MEMORANDUM DECISION AND<br>ORDER** |

## INTRODUCTION

Pending before the Court is Jose Luis Alvarez-Lopez's ("Alvarez-Lopez") Motion to Vacate Pursuant to 28 U.S.C. § 2255 (Dkt. 1). Having reviewed the Motion as well as the Response (Dkt. 7), Reply (Dkt. 8), and the underlying criminal record, the Court enters the following Order denying the Motion.

## PROCEDURAL BACKGROUND

On May 1, 2008, Alvarez-Lopez was charged in a complaint and on May 14, 2008, in an indictment with one count of conspiracy to distribute 500 grams or more of methamphetamine beginning on or about November 2007 and continuing to on or about April 30, 2008 in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and § 846 (Count One)

and with distributing 500 grams or more of methamphetamine on or about April 28, 2008 in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count Four). *Complaint,* Crim. Dkt. 1; *Indictment*, Crim. Dkt. 23. Attorney Ronald Christian was appointed counsel for Alvarez-Lopez for the initial appearance on the Complaint and continued to represent him through the appeal.

On January 22, 2009, Alvarez-Lopez entered into a Plea Agreement with the Government the factual basis of which included statements of one co-Defendant that he obtained methamphetamine on three different occasions from Alvarez-Lopez, and Alvarez-Lopez's alleged admissions upon arrest that he had sold drugs for approximately six months with a second co-Defendant and that $6,000 cash found in his closet during a search constituted drug proceeds. *Plea Agreement*, Crim. Dkt. 68; *Reply*, App. 1, Civ. Dkt. 8. He also agreed to testify against co-Defendant Chavez-Hernandez at his upcoming trial. Prior to the change of plea hearing, Alvarez-Lopez decided to forego pleading guilty and to proceed to trial as noted in counsel's Motion to Continue Trial (Crim. Dkt. 80).

The Court granted Alvarez-Lopez's subsequent Motion to Sever his trial from that of Chavez-Hernandez. *Order*, Crim. Dkt. 90. Trial was set for February 24, 2009. *Id.* The day before trial, the parties advised the Court that Alvarez-Lopez would enter a plea. *Not. of Hearing*, Crim. Dkt. 95. At the time set for trial, Alvarez-Lopez entered a plea of guilty to Count One of the Indictment without a Plea Agreement in exchange for dismissal of Count Four. *Min. Entry*, Crim. Dkt. 98. The factual basis for the plea was

much more limited than that included in the prior written Plea Agreement. Despite the lack of a written Plea Agreement, the Government advised the Court that it would consider – but not promise or guarantee – a USSG § 5K1.1 motion for a departure for substantial assistance if Alvarez-Lopez testified against co-Defendant Chavez-Hernandez at trial. *Plea Tr.* at 13. He was not called and did not testify at the trial. *Exhibit and Witness List*, Crim. Dkt. 106.

At sentencing, the Government refused to make a§ 5K1.1 motion and argued against safety-valve relief from the statutory minimum of ten years pursuant to 18 U.S.C. § 3553(f) on the grounds that Alvarez-Lopez was not being truthful with the Government. Following an evidentiary sentencing hearing, the Court found that Alvarez-Lopez was not eligible for the safety valve and sentenced him to the mandatory minimum of 120 months on Count One based on a guideline range of 120-121 months. *Min. Entry*, Crim. Dkt. 126; *Judgment*, Crim. Dkt. 129. Count Four was dismissed on the Government's motion. *Order*, Crim. Dkt. 128. Counsel then timely filed a notice of appeal. On October 4, 2010, the Ninth Circuit Court of Appeals affirmed the Court's denial of safety valve relief. *USCA Mem. Dec.*, Crim. Dkt. 140. Alvarez-Lopez subsequently filed the pending § 2255 Motion alleging ineffective assistance of counsel at all stages of the proceeding and alleging errors on the part of the Court.

## REVIEW OF § 2255 MOTION

Alvarez-Lopez has raised twenty-five (25) claims and numerous subclaims, the vast majority of which challenge the voluntariness of his plea and allege ineffective

assistance of counsel.  He also cites error on the part of the Court in certain respects primarily in denying safety valve relief.  Although the ineffective assistance of counsel claims are directed at appointed counsel Ronald Christian, it is important to note that Alvarez-Lopez was also represented concurrently by retained counsel Kirk Anderson from November of 2008, before the change of plea, through sentencing.  The Government has obtained and submitted affidavits of each counsel with its Response.  *See Affidavit of Kirk J. Anderson*, Dkt. 7-1; *Affidavit of Ron Christian*, Dkt. 9.[1]

The claims raised by Alvarez-Lopez cover virtually every phase of the criminal proceeding:  pre-plea, plea, sentencing, and appeal.  Underlying many of the claims is his position that faulty interpretation of his confession at his post-arrest interrogation and difficulty in understanding the officers' questions at the time of his interrogation and subsequent attempts at cooperation led to the failure to receive the safety valve and benefit of a § 5K1.1 motion.  Significantly, as noted above, the Court heard testimony on this issue at the sentencing hearing and was therefore in a position to evaluate the relative credibility of Alvarez-Lopez and the investigating officers.

The Government urges dismissal of all claims without an evidentiary hearing.  Alvarez-Lopez did not rebut any of the statements in the affidavits of counsel in his Reply.  Rather, he addressed only Ground 10 which the Government had alleged in its Response lacked specificity.

---

[1]  The Affidavit of Ron Christian submitted with the Government's Response as Dkt. 7-2 was missing a page.  The Affidavit of Ron Christian appearing at Dkt. 9 is the complete document.

**MEMORANDUM DECISION AND ORDER - 4**

# STANDARDS OF LAW

## 1.      28 U.S.C. § 2255

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."  28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."

If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

The Court may dismiss a § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record.  *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

**MEMORANDUM DECISION AND ORDER - 5**

If the Court does not dismiss the proceeding, the Court then determines under Rule 8 whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

**2.     Ineffective Assistance of Counsel**

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U. S. 668 (1984).  Mere conclusory allegations are insufficient to state a claim of ineffective assistance of counsel. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).  The *Strickland* standard applies to ineffective assistance of counsel claims against appellate counsel as well. *See Miller v. Keeney*, 882 F.2d 1428 (9th Cir. 1989).

In order to establish deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  Under the performance prong, there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Id*. at 689.  This is so because for the defendant, "[i]t is all too tempting . . . to second-guess counsel's assistance after conviction or adverse sentence. . . ." *Id.*  For the court, "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (discussing *Strickland*).

In order to establish prejudice, a defendant must affirmatively prove by a

reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The *Strickland* standard is "highly demanding." *Kimmelman v. Morrision,* 477 U.S. 365, 381-82; 386 (noting that the court should "assess counsel's overall performance throughout the case" when evaluating whether his assistance was reasonable).

Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687).

Ineffective assistance of counsel claims for failure to file a notice of appeal are also evaluated under the *Strickland* test. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Where a defendant specifically instructs counsel to file a notice of appeal, failure to do so constitutes ineffective assistance of counsel, and the lost chance to appeal constitutes prejudice. *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1196-98 (9th Cir. 2005). However, where a defendant does not instruct counsel to either file or not file a notice of appeal, the court must first determine whether counsel consulted with the defendant regarding an appeal. *Flores-Ortega*, 528 U.S. at 477-78 (2000). If counsel has not done so, then the court must determine whether that failure to consult in and of itself constituted deficient performance. *Id*.

If counsel fails to consult with a defendant about an appeal in circumstances giving rise to the duty to consult, a defendant must demonstrate that he would have timely appealed but for counsel's failure to consult. *Id.* at 484. Evidence that a defendant sufficiently demonstrated an interest in appealing is not determinative that he would have instructed counsel to file a notice of appeal after receiving reasonable advice. *Id.* at 486.

## DISCUSSION

In evaluating Alvarez-Lopez's claims, the Court is mindful of its obligation to liberally construe "pro se complaints and motions from prisoners," including § 2255 motions. *See United States v. Seesing*, 234 F.3d 456, 463 (9th Cir. 2000). *See also Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (same in context of a 42 U.S.C. § 1983 action noting obstacles caused by incarceration such as "limited access to legal materials and sources of proof").

As previously indicated, Alvarez-Lopez's claims revolve primarily around his contention that his initial interrogation was flawed due to the investigating officer's alleged inability to speak or understand Alvarez-Lopez's dialect of Spanish. Accordingly, to provide a backdrop to the allegations, the Court will go into considerable detail about the arguments concerning the interrogation and subsequent attempts at cooperation before addressing the individual claims.

### 1. Confession and Cooperation Interviews

Idaho State Police Narcotics Detective Jose Banda interrogated Alvarez-Lopez at the time of his arrest. *Sent. Tr.* at 28. They conversed in Spanish because Detective

Banda had spoken Spanish his entire life and had interviewed many people in Spanish over his twenty years as a law enforcement officer. *Id*. at 29-30. According to Detective Banda, Alvarez-Lopez stated that he and his two co-Defendants had been dealing drugs for four to six months and had distributed four to six pounds of methamphetamine during that time. *Id*. at 34. They discussed the price he charged for various amounts of the drug. *Id*. The factual basis of his initial written Plea Agreement was based on Alvarez-Lopez's alleged confession. The factual basis also included his alleged admission that he had $5,000 or $6,000 at his residence that were proceeds from prior sales of drugs. *Plea Agreement,* Crim. Dkt. 67 at 5-6.

As stated above, although he initially signed the Plea Agreement, Alvarez-Lopez subsequently decided against pleading guilty pursuant to that Plea Agreement. He contended that he and Detective Banda could not communicate effectively because Detective Banda spoke poor Spanish which prevented effective communication. *Christian Aff*. ¶ 9. Alvarez-Lopez contended that he had not admitted many of the facts in Detective Banda's report. *Id*.

In an attempt to secure a § 5K1.1 motion, counsel set a debriefing interview on October 28, 2008. Defense counsel arranged for the services of a Spanish interpreter when advised that Detective Banda would again be conducting the interview. *Id*. at ¶ 12. After an hour of questioning, the interpreter *sua sponte* told counsel that she did not believe Alvarez-Lopez and Detective Banda were communicating effectively in Spanish essentially because they spoke different dialects. *Id*. ¶ 14. The interview was terminated,

and the Government requested a continuance of the trial to investigate whether the confession was voluntary. *Id*. ¶ 16.

Negotiations continued, and Attorney Kirk Anderson was engaged by Alvarez-Lopez's family to assist with the defense. Both he and Attorney Christian met with Alvarez-Lopez two days before the February 22, 2009 trial setting. *Christian Aff.* ¶¶ 17-18; *Anderson Aff.* ¶ 5. Because both attorneys felt that he was quite likely to lose at trial, they worked with Alvarez-Lopez to come up with a sufficient factual basis to support the conspiracy charge to which the Government would agree. *Christian Aff.* at ¶ 18; *Anderson Aff.* ¶ 5. The Government agreed to the more limited factual basis which included the following admissions: (1) that he knew that his codefendants were selling methamphetamine, (2) that he had been nearby when methamphetamine was sold at the JC Penny's store; (3) that he had provided a location for them to exchange the methamphetamine; and (4) that he telephoned them at least once to warn them that they were being investigated by law enforcement. *Id*. ¶ 19.

**2.      Plea Hearing**

As illustrated below, at the change of plea hearing held on February 24, 2009, the Court conducted a very thorough Rule 11 plea colloquy, and Alvarez-Lopez did not express any of now claimed confusion or hesitancy at any time during the hearing.

After being sworn, Alvarez-Lopez testified under oath that he had been able to understand the advice of counsel with the assistance of an interpreter, that he had had adaquate time to be with his attorney before making his appearance at the plea hearing,

that he was satisfied in all respects with the services of counsel, and that he was not under the influence of any medication or drugs. *Plea Tr.* at 3-4. He further testified under oath that he had read and gone over the conspiracy charge against him and felt that he understood it. *Plea Tr.* at 4. AUSA Lucoff then recited the limited factual basis agreed upon by the parties as to Alvarez-Lopez's involvement in the offense and recited some additional facts to which Alvarez-Lopez had agreed to admit. *Plea Tr.* at 5-7. The additional facts included that through a confidential informant, the Idaho State Police had purchased approximately four ounces of methamphetamine from one of the co-defendants on March 18, 2008, another four ounces from the same co-defendant on April 16, 2008, and two pounds on April 30, 2008 which precipitated the arrests. *Plea Tr.* at 5-6.

Following the recitation of the factual basis, the Court advised Alvarez-Lopez that the offense carried a maximum punishment of life and a minimum of ten years. *Plea Tr.* at 7. Alvarez-Lopez stated that he understood the maximum possible punishment. *Plea Tr.* at 8. He was then advised that he could still elect to have a trial by jury where the Government would have to prove his guilt beyond a reasonable doubt, and that he would enjoy the presumption of innocence and the right to remain silent. *Plea Tr.* at 8-9. The Court then elaborated on the various constitutional protections that would be afforded him if he went to trial. *Plea Tr.* at 9. Finally, the Court advised Alvarez-Lopez that he would be waiving each and every one of those protections except for representation by counsel. *Plea Tr.* at 9-10. Alvarez-Lopez then stated under oath that he understood his

constitutional rights, would waive them, and would proceed with the plea hearing. *Plea Tr.* at 10.

Before accepting his plea, the Court advised Alvarez-Lopez, among other things, that any prediction of the sentence would be just that and not a promise, that the Court had to consider relevant conduct, and that it could consider aggravating as well as mitigating circumstances. *Plea Tr.* at 11-12. Alvarez-Lopez stated under oath that he was aware of that. *Plea Tr.* at 12. The Court then went on to describe ways in which the sentencing guideline range could be increased or decreased. *Plea Tr.* at 12. He stated he was aware of those factors. *Plea Tr.* at 12-13.

AUSA Lucoff then clarified to the Court that in addition to dismissing Count Two, he had advised counsel that if Alvarez-Lopez testified truthfully against co-Defendant Chavez-Hernandez, the Government would consider making a § 5K1 motion, "but there has been no promise or guarantee of that." *Plea Tr.* at 13. This prompted the Court to stress that it would be the Government that would make the decision about whether a § 5K1.1 motion would be filed or not, that the Court could not force it to happen, and that it would be up to the Court as to whether and to what extent a departure should be made if the motion was made. *Id.* at 14. Alvarez-Lopez stated under oath that he understood. *Plea Tr.* at 14. He then admitted the factual basis as recited by AUSA Lucoff and entered his plea which he agreed he was making voluntarily and of his own free will. *Plea Tr.* at 14-15. The Court concluded the plea hearing by describing the Presentence Report and

sentencing processes and asking Alvarez-Lopez whether he had any questions at all. *Plea*

*Tr.* at 16-17. He stated under oath that he did not. *Plea Tr.* at 17.

## 3. Grounds for Relief

### A. Pre- Plea Claims

#### (1) *Illegal Search and Seizure and Failure of Counsel to Contest*

In Ground One, Alvarez-Lopez alleges that investigators, in violation of the Fourth

Amendment, searched his residence without a warrant or probable cause merely because

he was present in the vicinity when his two co-defendants were arrested and that counsel

was ineffective for not moving to suppress the evidence obtained in the search. The

Government asserts, and Alvarez-Lopez does not deny in his Reply, that he consented to

the search. Nor did Alvarez-Lopez contradict the statements of counsel that Alvarez-

Lopez confirmed that he had consented to the search of his home and other property.

*Christian Aff.* ¶¶ 2, 4.

A search conducted without a warrant based on probable cause absent consent is

"per se unreasonable." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations

omitted). Consent, however, excuses the need for a warrant. *Id. See also United States*

*v. Huffhines*, 967 F.2d 314, 318 (9th Cir. 1992) ("A search conducted pursuant to valid

consent is an exception to the fourth amendment's warrant and probable cause

requirements.").

Because Alvarez-Lopez consented to the search, there was no basis for challenging

the search. Therefore, counsel was not deficient in failing to move to suppress the

**MEMORANDUM DECISION AND ORDER - 13**

evidence seized in the search.  In any event, no inculpatory evidence was found during

the search.  *Response* at 8; *Christian Aff.*, ¶ 4.  Although some cash was found, it was not

traceable to any drug sales.[2]  *Id.*  Furthermore, even if the search had been illegal, pre-

plea constitutional claims are not cognizable after entry of a plea.  *See Tollett v.*

*Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly

admitted in open court that he is in fact guilty of the offense with which he is charged, he

may not thereafter raise independent claims relating to the deprivation of constitutional

rights that occurred prior to the entry of the guilty plea.")

### (2)     *Failure to Prepare for Confession*

In a portion of Ground Ten, Alvarez-Lopez asserts that counsel was ineffective for

failure to prepare for a confession.  The Government urges dismissal of this ground

because it is not sufficiently detailed, specific, or non-conjectural and fails to articulate

how counsel failed to prepare for the confession.  *Response* at 8.  In his Reply, Alvarez-

Lopez explains the basis for this claim.  It appears that he is not referring to the

confession he made upon his arrest but rather to the failure of counsel to properly prepare

him for entry of his plea and cooperating with the Government.  The Court will therefore

address this claim below.

---

[2]  The only evidence that the cash was connected to the drug sales was Alvarez-Lopez's alleged
confession which the Government did not use.

**MEMORANDUM DECISION AND ORDER - 14**

### B.    Plea Stage

#### (1)    Knowing and Voluntary Plea

A guilty plea is constitutionally valid only if it is "voluntary" and "intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).  A guilty plea is deemed valid when a defendant is advised of the nature and elements of the charges against him as well as the possible punishment and understands that he is waiving his constitutional rights to avoid self-incrimination, to confront his accuser, and to have a jury decide his case.  *See Brady*, 397 U.S. at 749. *See also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).  Furthermore, to be valid, a plea must not be made based on threats, misrepresentations, or improper promises.  *Brady,* at 755.

Statements made in open court at the time of a plea carry a strong presumption of verity and are entitled to great weight.  *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986) (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)); *see also United States v. Kazcynski*, 239 F.3d 1108, 1114-15 (9th Cir 2001) ("substantial weight" must be given to in-court statements).  Even though that presumption is not necessarily an insurmountable barrier to an evidentiary hearing, the "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Id*. (citations omitted).

Here, Alvarez-Lopez contends that his plea was involuntary for several reasons: (1) because he spoke a different dialect than the investigators did and the Court accepted

the "misinterpreted confession (Ground 2); (2) because the Court did not properly address the "numerous instances where [he] indicated his unwillingness, hesitance in changing his plea and his misunderstanding of the process that he was engaged in. . . .;" (*Brief* re Ground 2); (3) because his plea was based on his uncorroborated statements of investigators (Ground 3); (4) because the plea was rushed (Ground 5); (5) because he understood the sentence would be less than he received, he did not understand the burden of proof, the Court should have explained the burden, and the Court did not determine he actually understood (Ground 6 and *Brief* at 12-13; Ground 11); (6) because he was not provided with the assistance of a translator throughout the investigation, there were numerous misunderstandings throughout the plea colloquy, and he exhibited "repeated displays of confusion" during the plea colloquy (Ground 7); (7) because he did not respond to the Court's inquiry whether he understood the sentencing process and showed "hesitance and misunderstanding" during the plea colloquy (Ground 8); and (8) that it was not clarified that if he were deemed indigent he would not have to bear the cost of counsel through trial despite having advised the Court of his misunderstanding (Grounds 9 and 11 and *Brief* at 21-22).

The vast majority of Alvarez-Lopez's allegations are wholly incredible in the face of the record. The plea was based on the limited facts he was willing to admit and not based on his confession. He did not exhibit any uncertainty, hesitance, confusion, or misunderstanding at the plea hearing. The Court advised him that the statutory minimum was ten years absent the safety valve. The Court explained the burden of proof and the

sentencing process, and indeed counsel had already been appointed precisely because he could not afford counsel. He stated under oath than he understood everything discussed at the plea hearing. A translator was utilized at all Court appearances, and counsel engaged the services of a translator during all of his significant discussions with Alvarez-Lopez. *Christian Aff.* ¶ 26. Despite his claim that he confessed involvement in only a small amount of drugs, the record reflects that he pleaded guilty to involvement with two pounds of methamphetamine which exceeds the 500 grams or more of methamphetamine alleged in the count of conviction. Specifically, as part of his recitation of the factual basis of the plea, to which Alvarez-Lopez agreed, AUSA Lucoff stated:

> It is my understanding that Mr. Alvarez-Lopez is prepared to admit to his role in the conspiracy. That being that he supplied a business or safe location for Mr. Aguirre and Mr. Chavez-Hernandez to exchange methamphetamine; in particular, the two pounds of methamphetamine delivered on April 30, 2008.

*Plea Tr.* at 7.

As for his specific claim that the plea was rushed because of counsel's ineffective assistance and therefore not voluntary and knowing, the Court notes that the case he cites in his brief in inapposite. *See Brief* at 10 (citing *United States v. Howard*, 381 F.3d 873 (9th Cir. 2004)). The court in *Howard* stated that "[t]he late timing of the proffer of the plea does not, by itself, support an ineffective assistance of counsel claim." *Id*. at 881. The court found only that "[w]hen combined with Howard's uncontroverted drug use and allegations of incompetence [as a result of the use of powerful narcotic pain medication], however, the claim [of ineffective assistance of counsel] has sufficient merit to justify an

evidentiary hearing." *Id*. Here, there is no such analogous credible issue that coupled with the late plea would warrant an evidentiary hearing on the claim of ineffective assistance of counsel on that basis.

Alvarez-Lopez also bases his claim that his plea was involuntary on various claims of ineffective assistance of counsel during the plea stage. However, as shown below, Alvarez-Lopez has not met his burden of demonstrating the requisite deficient performance and prejudice.

Alvarez-Lopez's stated grounds are merely conclusory allegations made in hindsight that do not support a finding of fraudulently induced or involuntary plea. Nor do they overcome the strong presumption of verity of his sworn statements at the change of plea hearing which complied in every respect with the requirements of Fed. R. Crim. P. 11.

### (2)    *Ineffective Assistance of Counsel*

The appropriate standard for determining prejudice in cases involving plea bargains is that the defendant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Ninth Circuit has construed *Hill* to encompass prejudice claims that the defendant would have received a better plea bargain absent ineffective assistance of counsel. *See United States v. Baramdyka*, 95 F.3d 840, 846 (9th Cir. 1996). *See also Howard*, 381 F.3d at 882 (citing *Baramkyka*).

The Supreme Court has recognized that "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks" of a plea. *Premo v. Moore*, 131 S.Ct. 733, 741 (2011). Considerations surrounding these strategic choices in the pre-trial context "make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Id.*

A difference of opinion regarding tactics is not proof of ineffective assistance of counsel because "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." See *Cox v. Ayers*, 613 F.3d 883, 893 (9th Cir. 2010) (citing *Strickland*, 466 U.S. at 690 and *United States v. Mayo*, 646 F.3d 369, 375 (9th Cir. 1981) (per curiam)).

In addressing Alvarez-Lopez's claims of ineffective assistance of counsel during the plea stage, the Court gives great deference to counsels' reasoned belief that the evidence against Alvarez-Lopez, even without the confession, was quite strong. *See Anderson Aff.* ¶¶ 4, 6, 12; *Christian Aff.* ¶¶ 5, 10, 17, 18.

    **(a)**  ***Failure to Withdraw Plea***

Alvarez-Lopez claims his attorney was ineffective for failing to seek to have his plea withdrawn based on the fact that he and Detective Banda allegedly spoke different dialects which led to a misinterpretation of his confession (Ground 2).

"A defendant who moves to withdraw a guilty plea before a sentence is imposed is not required to show that he would not have pled, but only that the proper legal advice of

which he was deprived 'could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty....'" *United States v. Bonilla*, 637 F.3d 980, 983 (9th Cir. 2011) (quoting *United States v. Garcia*, 401 F.3d 1008, 1011–12 (9th Cir. 2005)). "A pre-sentence motion to withdraw a plea should be freely allowed if a defendant can show a 'fair and just reason' for requesting the withdrawal." *Id.* (quoting *United States v. Davis*, 428 F.3d 802, 808 (9th Cir. 2005)). The Ninth Circuit has cited examples of a "fair and just reason:" " . . . inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008) (internal citation and quotation marks omitted).

Here, Alvarez-Lopez has not met his burden of establishing entitlement to withdraw his plea. He has not shown that counsels' advice to plead in the face of strong evidence *not based on the confession* could have led a reasonable person not to plead guilty. The Rule 11 colloquy was thorough, his claims of expressions of confusion during the colloquy are conclusively rebutted in the record, there is no claim of newly discovered evidence, intervening circumstances, or any other reason that did not exist at the time he entered his plea. At the time of his plea, he obviously knew of his confession and of his claim that Detective Banda misinterpreted his confession due to translation issues. Accordingly, counsel's performance was not deficient in not advising him to move to withdraw his plea.

To the extent that Alvarez-Lopez claims the imposition of a higher than expected sentence constitutes grounds for withdrawing his plea, the Court notes the Ninth Circuit's guidance in *United States v. Nostratis*:

> A defendant cannot withdraw his plea because he realizes that his sentence will be higher than he had expected. *See [United States v.] Alber*, 56 F.3d [1106] at 1111 [9th Cir. 1995] (upholding denial of a plea withdrawal motion where the defendant "moved to withdraw his plea only after he realized that he was going to receive a heavier sentence than he expected"); *Shah [v. United States]*, 878 F.2d [1156] at 1162 [9th Cir. 1989] ("Nor do we believe that fear of receiving a harsh sentence, standing alone, constitutes a 'fair and just' reason to withdraw a plea[.]"). Defendants cannot plead guilty to "test the weight of potential punishment" and then withdraw their plea if the sentence is "unexpectedly severe." *United States v. Ramos*, 923 F.2d 1346, 1359 (9th Cir.1991), overruled on other grounds by *Ruiz*, 257 F.3d at 1032.

*United States v. Nostratis*, 321 F.3d 1206, 1211 (9th Cir. 2003).

The Court finds that counsel was not ineffective for failing to urge withdrawal of the plea. Alvarez-Lopez was well aware of the potential of receiving a sentence at the mandatory minimum given that he was advised of the possibility by counsel and the Court. *See Plea Tr.* at 7; *Anderson Aff.* ¶¶ 6, 7, 12, 13; *Christian Aff.* ¶¶ 5, 6, 7, 18, 24, 25. At no time did he ask counsel to move to withdraw his plea. *Anderson Aff.* ¶ 10; *Christian Aff.* ¶ 10.

### (b) *Failure to Obtain a Written Plea Agreement*

In Ground 5, Alvarez-Lopez alleges that counsel should have obtained a written Plea Agreement because it would have ensured a lesser sentence and departure because the Government would have been contractually obligated to move for the departure. The

**MEMORANDUM DECISION AND ORDER - 21**

written Plea Agreement he received from the Government and rejected, contained a provision to request a downward departure for substantial assistance and relief from the mandatory minimum. However, just as with the Government's oral statement at the plea hearing, it provided that the Government would only move for the departure if it determined that he provided complete and truthful information. Having a written Plea Agreement would not have given Alvarez-Lopez any advantage over the non-written Plea Agreement. He was still obligated to tell the complete truth to attain the departure. Furthermore, a written Plea Agreement would have required him to waive his right to appeal except in very limited circumstances. Without a written Plea Agreement, he was free to appeal any issue and, in fact, did so albeit unsuccessfully. Accordingly, the Court finds that counsel was not ineffective for failure to obtain a written Plea Agreement.

### (c)     *Failure to Prepare for Plea*

In Ground 10, Alvarez-Lopez alleges ineffective assistance of counsel for failure to prepare for the plea and for his debriefiing. The Government urges dismissal of this claim on the grounds that it is not sufficiently definite, specific, detailed, and non-conjectural. In his Reply, Alvarez-Lopez clarified this claim and supporting argument.

Alvarez-Lopez states that he decided to plead guilty and cooperate with the Government soon after his April 30, 2008 arrest because Attorney Christian told him that it was highly likely that he would be found guilty if he went to trial. *Reply*, at 2. He referred to the October 28, 2008 debriefing attempt that was aborted after the interpreter issues discussed above. *Id*. He acknowledges he signed a written Plea Agreement on

January 21, 2009 and that it was not presented to the Court because the Government

disagreed with him about his role in the offense. *Id*. at 2-3. He also references the

February 24, 2009 debriefing attempt that terminated because he would not admit the

facts to which Detectives Banda and Christiansen said he confessed after his arrest. *Id*. at

3. He claims that "Attorney Christian never advised [him] to agree with the role that the

government insisted [he] played in the offense." *Id*. at 3. He continued:

> Attorney Christian failed to provide the professional advice
> that Petitioner needed in order to make an intelligent,
> informed decision during the plea-bargaining process.
> Knowing about Petitioner's eagerness to cooperate with the
> government during the various debriefings, Attorney
> Christian should have advised Petition to put aside his
> disagreement with the detectives and focus instead on the
> sentencing benefits that Petitioner would receive by assisting
> the government in the criminal investigation and prosecution
> of other participants in the conspiracy.

*Reply* at 4.

Alvarez-Lopez has proclaimed his minimal involvement in the conspiracy in the

debriefings and throughout his § 2255 Motion. Against that backdrop, his argument is

tantamount to saying that counsel should have told him to lie in order to get a better

sentence. Alvarez-Lopez would have had to admit under oath at the plea hearing the very

statements he adamantly denies having made. Alvarez-Lopez points to the provision in

the written Plea Agreement regarding cooperation and a § 5K1.1 motion. The

Government offered the same conditions with respect to the oral plea. The Court finds

that Alvarez-Lopez has demonstrated neither deficient performance nor prejudice on this

claim.

**MEMORANDUM DECISION AND ORDER - 23**

**(d)** *Failure to Correct Misinterpreted Admission of Guilt to Incorrect Charge*

In Ground 11, Alvarez-Lopez alleges that the Court and counsel were well aware that his admission of guilt was obtained as a result of the "misinterpreted translation by investigators" and that counsel should have ensured that he knew his right to counsel and a jury trial before permitting him to waive those rights. *Brief* at 21-22. Again, the guilty plea was based on carefully negotiated facts and not based on his confession. Furthermore, even if counsel did not advise of his right to counsel and a jury trial, the record is clear that the Court did so. *See Plea Tr.* at 8-9. Therefore, Alvarez-Lopez was not prejudiced by any such failure. In his brief, he states that even if counsel was not aware of his "lack of understanding," Alvarez-Lopez advised the Court in front of counsel of his misunderstanding. This claim is rebutted by the record. The plea hearing transcript contains no such statement. Accordingly, this claim is subject to dismissal.

**C.    Sentencing Stage**

Alvarez-Lopez alleges claims of Court error and claims of ineffective assistance of counsel at the sentencing stage of the criminal proceedings.

**(1)    *Court Error***

**(a)    *Failure to Determine Review of PSR with Counsel***

Alvarez-Lopez claims the Court failed to inquire whether he and counsel had an opportunity to review the Presentence Report together (Ground 25). This claim is rebutted by the record. The Court noted that the Presentence Report had been completed and inquired as follows:

> THE COURT: . . . Have you had an opportunity to go over
> that with your counsel?
> THE DEFENDANT: Yes.
> THE COURT: You have noted, then, that the tentative
> findings as to the recommended Guideline calculations are a
> total combined offense level of 30, criminal history category
> I, which provides for a sentencing range, because of the
> statutory minimum of 120-121 months . . . .
> Other than any written objections and/or motions that may
> have been previously filed, do you have any dispute as to the
> Guideline calculations?
> THE DEFENDANT: No.

*Sent. Tr.* at 3-4.

Because Alvarez-Lopez's claim is conclusively rebutted by the record, it is subject to dismissal.

### (b)   *Violation of Right to Confront Witnesses*

Alvarez-Lopez claims that he was deprived of due process and the right to confront witnesses because the Court relied on misinterpreted testimony (Ground 24). The record reflects that he had the opportunity to confront Detectives Banda and Christiansen at the sentencing hearing regarding that misinterpreted statement. Furthermore, the Court relied on his admissions at the plea hearing and not on the allegedly misinterpreted testimony. Accordingly, this claim is subject to dismissal.

### (c)   *Safety Valve*

Alvarez-Lopez alleges that the Court erred by not granting safety-valve relief. He raised this same claim on appeal. "Issues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding. The fact that the issue may be stated in

different terms is of no significance." *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979) (citations omitted). Accordingly, this claim is subject to dismissal.

### (d) *Fair Sentencing Act of 2011*

Alvarez-Lopez claims that his sentence should be reduced by four points under the Fair Sentencing Act of 2011 and that he should be resentenced. The Court assumes that he is referring to the Fair Sentencing Act of 2010 ("FSA").

Congress passed the FSA to reduce the disparity between the amounts of crack cocaine and powder cocaine needed to trigger mandatory minimum sentences. *Dorsey v. United States*, 132 S.Ct. 2321, 2326 (2012). The FSA changed the threshold quantities of crack cocaine and authorized the United States Sentencing Commission to amend the sentencing guidelines to reflect the changes. *United States v. Davis*, 739 F.3d 1222, 1224 (9th Cir. 2014). Alvarez-Lopez's offense involved methamphetamine and not crack cocaine. Accordingly, this claim is subject to dismissal for that reason alone.

### (2) *Ineffective Assistance of Counsel*

Alvarez-Lopez asserted several grounds of ineffective assistance of counsel which are subject to dismissal because the mandatory minimum and failure to qualify for the safety valve precluded a lower sentenced than he received or because they are rebutted by the record.

### (a) *Failure to Request Various Departures or Variances*

Alvarez-Lopez claims counsel should have requested a variance for criminal history (Ground 18), a 4-level role reduction (Ground 17), a departure for familial

obligations (Ground 19), and a departure for alien status (Ground 20) and should have introduced mitigating evidence (Ground 21). Because the Court determined that Alvarez-Lopez was not entitled to the safety valve and the Government did not move for a § 5K1.1 departure, arguing for a lesser sentence would have been futile. Accordingly, he cannot demonstrate prejudice and these claims are subject to dismissal.

### (b)    *Failure to Prepare for Sentencing*

Alvarez-Lopez contends that counsel failed to adequately prepare for sentencing (Grounds 4, 10, and 21). He argues that counsel did not argue for the promised § 5K1.1 departure and did not introduce mitigating evidence. Otherwise, he provided no specific deficiencies in support of the claim.

The record reflects that counsel were well prepared for sentencing in that they presented testimony and cross examined Detectives Banda and Christiansen in an effort to demonstrate that language and translation issues caused the Government to think that he was being less than truthful and that should receive the benefit of the safety valve. As shown below, counsel was unable to locate the interpreter who identified the dialect difference. However, counsel called Alvarez-Lopez and his wife to testify about the language difficulty in the interpreter's absence. Finally, as stated above, introduction of any mitigating evidence would have been futile given the ruling on the safety valve. Accordingly, these claims of failing to prepare for sentencing are subject to dismissal.

### (c)    *Failure to Object to the Drug Quantity Determination*

Alvarez-Lopez claims that counsel failed to object to the drug quantity determination on the grounds that the amount was speculative, that he was not seen with any drugs, that counsel stated at the plea hearing that he intended to challenge the drug quantity, and that he had advised the Court at the plea hearing that he allowed his place of business to be used for a "small" amount of drugs only. The plea transcript rebuts the latter two grounds. Those statements were not made.

The drug quantity was based on Alvarez-Lopez's admission at the plea hearing that he supplied a safe location for his co-conspirators to exchange two pounds of methamphetamine (500 grams or more) triggering the mandatory minimum sentence that was imposed. *See Plea Tr.* at 5-7. Furthermore, as the Government points out in its Response, objecting to the drug quantity and arguing for a lower amount would have violated the Plea Agreement and possibly jeopardized his entitlement to the 2-level adjustment for acceptance of responsibility that he received. Accordingly, because Alvarez-Lopez can demonstrate no deficient performance or prejudice, this claim is subject to dismissal.

**(d)    *Failure to Move to Continue Sentencing***

Alvarez-Lopez claims that counsel should have moved to continue the sentencing to secure the attendance of the interpreter who noted the dialect problems (Grounds 15 and 16).  Counsel advised the Court at the sentencing hearing that he could not locate the interpreter.  His affidavit details the exhaustive efforts he made to locate her.  *Christian Aff*. ¶¶ 32, 33, 36.  That a continuance would have resulted in his locating the interpreter and that her testimony would have changed the outcome of the hearing is purely speculative.  Counsel made reasonable efforts to try to locate her.  Accordingly, this claim is subject to dismissal.

**(e)    *Failure to Review the PSR with Him***

Alvarez-Lopez claims that counsel did not review the Presentence Report with him.  As stated above, the record reflects otherwise.  He stated in response to the Court's questioning at the outset of the sentencing hearing that he and counsel had reviewed the Presentence Report.  *Sent. Tr.* 3-4.  Furthermore, counsels' affidavits concur that they reviewed the Presentence Report with Alvarez-Lopez with the assistance of an interpreter. *Anderson Aff.* ¶ 17; *Christian Aff.* ¶ 39.  Accordingly, this claim is subject to dismissal as rebutted by the record.

**(f)    *Failure to  Renew Objection Regarding Safety Valve***

Alvarez-Lopez claims that after sentencing he told counsel that he wanted to withdraw his plea, but counsel chose to appeal the safety valve issue instead and failed to appeal again after he lost the appeal (Ground 13).  As stated above, there were no

colorable grounds for withdrawing his plea. Counsel appealed the issue and lost. He could not appeal the issue a second time. Alvarez-Lopez claims counsel ignored the lack of evidence to support his conviction. However, in reality, it is Alvarez-Lopez who ignores that there was evidence aside from his confession such as the testimony of one of the co-Defendants, phone records indicating that he was a middle man, and his finger print on the bag of methamphetamine. *Sent. Tr.* at 73. Such evidence convinced not one but two attorneys that he would be most certainly be convicted if he went to trial. Counsel felt strongly enough about the issue that he appealed without even having consulted with Alvarez-Lopez. *Christian Aff.* ¶ 27. He acted reasonably in the circumstances. Accordingly, this claim is subject to dismissal.

### (g)     *Counsel's Cumulative Errors*

Alvarez-Lopez claims that counsel's cumulative "failures" combined to deprive him of effective assistance of counsel (Ground 23). The Court has considered each of the alleged deficiencies and determined that counsel's representation was reasonable and, that even if it was not, there was no resulting prejudice. Accordingly, this claim is subject to dismissal.

### D.     Appeal

As noted by the Government in its Response, Alvarez-Lopez does not allege failure to file an appeal. Rather, he makes the conclusory allegations devoid of specifics that he asked counsel to appeal each and every issue raised in this § 2255 Motion. As stated above, mere conclusory allegations are insufficient to state a claim of ineffective

assistance of counsel. *Shah*, 878 F.2d at 1161. Therefore, the Court will credit counsels'

statements regarding the issue of appeal. Alvarez-Lopez did not ask Attorney Anderson

to appeal. *Anderson Aff.* ¶ 14. Indeed, Attorney Anderson did not have any contact with

him following sentencing. *Id.* Attorney Christian likewise had no contact with Alvarez-

Lopez or his family following sentencing and was frustrated at the lack of

communication. *Christian Aff.* ¶ 27. Nevertheless, he "felt compelled to and did file an

appeal." *Id.*

Attorney Christian filed an appeal challenging the Court's decision not to grant

safety valve relief which was by far the most significant issue. Without the safety valve

relief, most of his other claims would be moot and his ineffective assistance of counsel

claims were not cognizable on appeal. Were counsel to succeed on the safety valve issue,

Alvarez-Lopez would be resentenced and the Court would have been free to consider

various departures, variances, and mitigating evidence. That he did not succeed does not

render his performance deficient. That he did not raise any other issues on appeal also

does not render his performance deficient.

A defendant does not have a constitutional right to have appellate counsel raise

every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "In

many instances, appellate counsel will fail to raise an issue because she foresees little or

no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely

recognized as one of the hallmarks of effective appellate advocacy . . . ."

*Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Including every weak issue on appeal detracts from attention appellate judge can give to stronger issues and reduces counsel's credibility thereby likely serving a client less effectively. *Id*. Many of Alvarez-Lopez's claimed grounds for appeal are indeed not only weak but frivolous. "An appeal is frivolous if the results are obvious, or the arguments of error are wholly without merit. [T]he decision to appeal should be a considered one, ... not a knee-jerk reaction to every unfavorable ruling." *In re George*, 322 F.3d 586, 591 (9th Cir. 2003) (internal quotation marks and citations omitted).

Here, although counsel apparently did not consult with Alvarez-Lopez about filing an appeal, there is no prejudice. Alvarez-Lopez did not lose his right to appeal. Counsel appealed the strongest issue and omitted the weak and frivolous issues that would only become relevant, if at all, if the Ninth Circuit had remanded for resentencing. Accordingly, Alvarez-Lopez's claim of ineffective assistance of counsel on appeal, to the extent he made one, is subject to dismissal.

## CONCLUSION

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "[T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689-90). Great deference should be used when judging an attorney's representation because "the attorney observed the relevant proceedings,

knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Id.* "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (citing *Strickland*, 466 U.S. at 690).

Here, not one but two attorneys reviewed the evidence and concluded that Alvarez-Lopez would almost certainly lose if he went to trial especially given the fact that his fingerprint was found on the bag of methamphetamine. They thus made the eminently reasonable decision to recommend that Alvarez-Lopez enter a plea and to focus on receiving safety valve relief and a § 5K1.1 departure. That neither pursuit was successful was not due to counsel's deficient performance but rather to Alvarez-Lopez's inability or refusal to admit the level of his involvement in the conspiracy even in the face of the strong evidence against him. Moreover, Alvarez-Lopez's repeated claims of having expressed confusion at the plea hearing are conclusively rebutted by the record. Finally, any claims to entitlement to departure under any ground were mooted by the Court's decision regarding the safety valve, a decision that was upheld on appeal.

The Court had the benefit of having actually heard evidence at the sentencing hearing regarding the key issue underlying Alvarez-Lopez's § 2255 Motion – the misinterpreted confession. Having heard that testimony, presided over the trial of co-Defendant Chavez-Hernandez, and had Detective Banda and Detective Christiansen appear before the Court many times in the past, the Court was comfortable in its decision that Alvarez-Lopez was not being completely truthful. The Ninth Circuit affirmed that

decision.  Therefore, Alvarez-Lopez's claims of Court error are either rebutted by the record, barred from relitigating where raised on appeal, or lacking merit as stated above.

## CERTIFICATE OF APPEALABILITY

A § 2255 movant cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A certificate of appealability will issue only when a movant has made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy this standard when the court has dismissed a § 2255 motion (or claims within a § 2255 motion) on procedural grounds, the movant must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right.  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).[3]   When the court has denied a § 2255 motion or claims within the motion on the merits, the movant must show that reasonable jurists would find the court's decision on the merits to be debatable or wrong.  *Slack,* 529 U.S. at 484; *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006).

After carefully considering the record and the relevant case law, the Court finds that reasonable jurists would not find the Court's determination that counsel's

---

[3]   The requirements for a certificate of appealability for a § 2255 appeal do not appear to differ from the requirements for a certificate of appealability for a § 2254 habeas petition related to a state conviction.  *See United States v. Asrar*, 116 F.3d 1268 (9th Cir. 1997).  Therefore, cases addressing the requirements in the context of a § 2254 proceeding are pertinent to a § 2255 proceeding as well.

performance was not constitutionally deficient, that the plea was not invalid, or that the Court did not err to be debatable or wrong. Accordingly, a certificate of appealability will not issue.

**ORDER**

**IT IS ORDERED:**

1.    Jose Luis Alvarez-Lopez's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. 1) is **DENIED** and **DISMISSED** in its entirety.

2.    No certificate of appealability shall issue. Alvarez-Lopez is advised that he may still request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Local Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

5.    If Alvarez-Lopez files a timely notice of appeal, and not until such time, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals. The district court's file in this case is available for review online at www.id.uscourts.gov.

DATED: **August 13, 2014**

Honorable Edward J. Lodge
U. S. District Judge